IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHARDELL NAKI,<br><br>               Plaintiff,<br><br>   vs.<br><br>STATE OF HAWAIʻI, et al.,<br><br>               Defendants. | CIV. NO. 23-00435 JAO-BMK |
| NOVA BURNES, et al.,<br><br>               Plaintiffs,<br><br>   vs.<br><br>HAWAIIAN ELECTRIC COMPANY INC., et al.,<br><br>               Defendants. | CIV. NO. 23-00452 JAO-BMK |
| MONICA I. EDER, et al.,<br><br>               Plaintiffs,<br><br>   vs.<br><br>MAUI ELECTRIC COMPANY, LIMITED, et al.,<br><br>               Defendants. | CIV. NO. 23-00459 JAO-BMK<br><br>ORDER DISMISSING WITHOUT PREJUDICE CLAIMS AGAINST STATE OF HAWAIʻI DEFENDANTS AND OTHERWISE DENYING MOTIONS TO REMAND IN MAUI FIRE CASES BROUGHT AS PUTATIVE CLASS ACTIONS |

## ORDER DISMISSING WITHOUT PREJUDICE CLAIMS AGAINST STATE OF HAWAIʻI DEFENDANTS AND OTHERWISE DENYING MOTIONS TO REMAND IN MAUI FIRE CASES BROUGHT AS PUTATIVE CLASS ACTIONS

In this order, the Court will resolve whether it has jurisdiction over three putative class actions arising out of the August 8, 2023 Maui wildfire that claimed over one hundred lives and decimated Lahaina. *See Naki v. State of Hawaiʻi, et al.*, CV No. 23-00435 JAO-BMK ("*Naki*"); *Burnes, et al. v. Hawaiian Electric Company Inc.*, CV No. 23-00452 JAO-BMK ("*Burnes*"); *Eder, et al. v. Maui Electric Company, Limited, et al.*, CV No. 23-00459 JAO-BMK ("*Eder*").[1] The named plaintiffs in each action initially filed suit in Hawaiʻi state court against different combinations of private utility companies, private landowners, and governmental entities for failing to prevent the rapid spread of the fire, and causing and contributing to it. Each putative class action was then removed to federal court on two grounds: under the Multiparty, Multiforum, Trial Jurisdiction Act ("MMTJA"), which grants jurisdiction over cases arising out of certain mass casualty events, and under the Class Action Fairness Act ("CAFA"), which grants jurisdiction over certain class actions.

---

[1] Although these three cases—*Eder*, *Naki*, and *Burnes*—have not been formally consolidated (and the Court will not opine here on whether they should be), the jurisdictional issues in each overlap such that a consolidated order is warranted.

State of Hawaiʻi Defendants (collectively, "the State") move to remand *Eder* and *Naki*.[2]  The State is not a defendant in *Burnes*, and so did not move to remand *Burnes*.  Although not always consistent on the point, the *Eder* and *Burnes* Plaintiffs now support remand, or alternatively ask the Court to stay or dismiss these actions under the *Colorado River* doctrine, applicable when there are certain parallel proceedings in state and federal court.  The *Naki* Plaintiffs and every non-State Defendant who has appeared in these actions oppose remand.

The Court has already remanded around ninety individual actions arising out of the Maui wildfires that were removed solely under the MMTJA.  *See Sheikhan, et al. v. Hawaiian Electric Industries, Inc., et al.*, CV No. 23-00460-JAO-BMK ("*Sheikhan*").  Those individual actions are now being resolved in a coordinated fashion through a Special Proceeding in Hawaiʻi state court.  *See, e.g.*, *In re Maui Fire Cases*, 2024 WL 759707 (D. Haw. Feb. 7, 2024), *report and recommendation adopted*, 2024 WL 756472 (D. Haw. Feb. 23, 2024).  All that remains for this Court to resolve, then, is whether these three putative class actions should also return to state court or instead remain here, or alternatively, be stayed or dismissed while those other actions proceed in state court.

---

[2]  In *Eder*, those defendants include: the State of Hawaiʻi, Hawaiʻi Housing Finance and Development Corporation, and Hawaiʻi Department of Land and Natural Resources ("DLNR").  *See Eder*, ECF No. 89.  In *Naki*, those defendants include the State of Hawaiʻi and DLNR.  *See Naki*, ECF No. 21.

For the following reasons, the Court concludes that *Eder*, *Naki*, and *Burnes* were properly removed under CAFA and no party has yet shown these cases should be remanded, stayed, or dismissed.  The State has, however, demonstrated that the claims against it must be dismissed based on its invocation of the Eleventh Amendment.  The State's motions are granted inasmuch as the claims against it in *Eder* and *Naki* will be dismissed without prejudice—meaning those plaintiffs can refile their claims against the State in state court.  Otherwise, the State's motions are denied.  The remainder of these three putative class actions will proceed in federal court, at least for now.

## I.      BACKGROUND

### A.    Facts

The Court does not set out to recount the plaintiffs' allegations in full here for two reasons.  First, many of the finer details are not relevant to the Court's jurisdictional analysis.  But also, it is impossible for the Court to capture the profound sense of loss permeating these cases.  None of the defendants disagree— even if they dispute their alleged role in contributing to the loss.  With that in mind, the Court turns to the alleged facts relevant to the jurisdictional question presented here.

In the days leading up to August 8, 2023, the National Weather Service issued public notices that Hawaiʻi could be impacted by the developing Hurricane

Dora, including that strong winds and dry conditions presented a high fire risk. *See, e.g.*, *Eder*, ECF No. 1-2 ¶¶ 4, 101–06.[3]  Around 6:30 a.m. on August 8, 2023, a windstorm caused power lines to fall near Lahainaluna Road, causing a fire, *see, e.g.*, *id.* ¶¶ 12, 143, which flared up again at 9:30 a.m. and 3:30 p.m. (together comprising the "Lahaina Fire"), *see id.* ¶¶ 111–13.  The Lahaina Fire was "fast-moving, deadly, and destructive," destroying "homes, businesses, churches, schools, and historic and cultural sites" and killing "scores of people and ruin[ing] hundreds—if not thousands—of lives."  *Id.* ¶ 106.

## B.  Procedural History

As noted above, the named plaintiffs in *Eder*, *Naki*, and *Burnes* initially filed suit in state court.  *Eder*, ECF No. 1; *Naki*, ECF No. 1; *Burnes*, ECF No. 1.  All three cases were removed based on the MMTJA and CAFA.  *See Eder*, ECF No. 1 (Defendant Spectrum Oceanic, LLC removal notice); *Naki*, ECF No. 1 (Defendant Trustees of the Estate of Bernice Pauahi Bishop removal notice); *Burnes*, ECF No. 1 (Defendant Trustees of the Estate of Bernice Pauahi Bishop removal notice).

---

[3]  Defendants note that, because investigations into the fire are ongoing, they accept Plaintiffs' allegations as true for purposes of the motions before the Court. *See, e.g.*, *Eder*, ECF No. 98 at 15 n.2.  The Court will as well.  Further, because the allegations in *Eder*, *Naki*, and *Burnes* are consistent with respect to facts relevant to the jurisdictional analysis, the Court cites the allegations in *Eder* as representative.

Because numerous other actions related to the Lahaina Fire had also been removed and assigned to the undersigned, the Court directed coordinated briefing on the State's initial motion to remand in *Naki*, as well as a motion to remand filed by the plaintiffs in *Sheikhan*, an individual action removed solely under the MMTJA. *Eder*, ECF No. 81. Pursuant to that coordination, the State filed a separate motion to remand in *Eder*. *Eder*, ECF No. 89. No party initially moved to remand *Burnes* where, again, the State is not a named defendant.

The defendants in *Eder*, *Naki*, and *Sheikhan* that support removal filed an omnibus opposition addressing the remand motions in all three cases. *See Eder*, ECF No. 98; *Naki*, ECF No. 49; *Sheikhan*, ECF No. 61. The Court will refer to those defendants collectively as "Removing Defendants." In response to the State's motion to remand, the *Naki* Plaintiffs filed a motion asking the Court to sever the State and remand only the claims against it, which the State opposes. *Naki*, ECF Nos. 45, 46, 48, 50. The Court held a consolidated hearing on the pending motions in *Eder*, *Naki*, and *Sheikhan* on March 6, 2024.

On March 11, 2024, the Court granted the motion to remand in *Sheikhan*, concluding that jurisdiction was not proper under the MMTJA. *See Sheikhan*, ECF No. 77. Based on that conclusion, the Court remanded around ninety other individual actions arising out of the Lahaina Fire that had been removed solely under the MMTJA. *See Sheikhan*, ECF Nos. 78, 80.

6

Also on March 11, 2024, the Court directed the parties in *Eder*, *Naki*, and *Burnes* to submit supplemental briefing addressing whether certain CAFA exceptions justify remanding *Burnes*, and whether any abstention provisions justify staying or dismissing these putative class actions in favor of the parallel actions arising out of the Lahaina Fire that have now been remanded to state court. *Eder*, ECF No. 109; *Naki*, ECF No. 63, *Burnes*, ECF No. 50.  The parties submitted those supplemental briefs on March 20, 2024.  *See Eder*, ECF Nos. 110, 111, 112; *Naki*, ECF Nos. 64, 65, 66; *Burnes*, ECF Nos. 52, 53.  Significantly, the *Naki* Plaintiffs want to remain in federal court, whereas the *Eder* and *Burnes* Plaintiffs want to return to state court.

## C.     The Classes and Parties

As the parties likely expect based on the Court's prior order in *Sheikhan*, the Court will easily determine below that it does not have jurisdiction over these cases under the MMTJA, and focuses its attention on whether it has CAFA jurisdiction. To do so, it is necessary to review the proposed classes and parties in each of the three cases.

### 1.     The *Eder* Proposed Class and Parties

The *Eder* Plaintiffs seek to certify the following class:

> All persons and entities who suffered (1) real property loss, (2) personal property loss, (3) business loss, and/or (4) personal injury as a result of the Lahaina Fire that started on August 8, 2023.

7

*Eder*, ECF No. 1-2 ¶ 154.  They bring state law claims against the following groups of defendants:  (1) the State;  (2) Maui County;  (3) "HECO" (Maui Electric Company, Limited; Hawaiian Electric Company, Inc.; Hawaii Electric Light Company, Inc.; Hawaiian Electric Industries, Inc.); (4) "Telecom Defendants" (Hawaiian Telcom, Inc.; Spectrum Oceanic, LLC)[4]; and (5) "Private Landowner Defendants" (Trustees of the Estate of Bernice Pauahi Bishop, or "KS" because the estate is sometimes referred to as "Kamehameha Schools"; Peter Klint Martin; Peter Klint Martin Revocable Trust; Hope Builders Holding LLC; Hope Builders Inc.; Hope Builders LLC; Kauaula Land Company LLC; Kipa Centennial, LLC; Douglas Poseley; Donna Anne Poseley; James C. Riley Trust; Jeanne A. Riley Trust; Wainee Land & Homes, LLC; West Maui Land Company, Inc.; Makila Ranches Inc.; Makila Land Co., LLC; Makila Ranches Homeowners Association, Inc.; and JV Enterprises, LLC).

### 2.    The *Naki* Proposed Class and Parties

The *Naki* Plaintiffs seek to certify the following class:

> All persons, organizations, and companies that suffered real

---

[4]  The *Eder* Plaintiffs voluntarily dismissed Hawaiian Telcom and Hawaiian Telecommunications, Inc.  *Eder*, ECF No. 76.  The *Eder* Plaintiffs had also named Charter Communications Holding Company, LLC; Charter Communications Holding, LLC; Charter Communications, LLC; and Charter Communications Operating, LLC as defendants, but dismissed those entities without prejudice prior to removal.  *See Eder*, ECF No. 1 at 3 n.2.

property and personal property losses as a result of the Lāhainā Fire[5] on August 8, 2023.

*Naki*, ECF No. 1-2 ¶ 31.  They bring state law claims against the following groups of defendants:  (1) the State;  (2) Maui County; and (3) "Private Landowner Defendants" (Peter Klint Martin; Peter Klint Martin Revocable Trust; Hope Builders Holding LLC; Hope Builders Inc.; Hope Builders LLC; Kauaula Land Company LLC; Kipa Centennial LLC; Douglas Poseley; Donna Anne Poseley; James C. Riley Trust; Jeanne A. Riley Trust; Wainee Land & Homes, LLC; West Maui Land Company, Inc.; Makila Ranches Inc.; Makila Land Co., LLC; Makila Ranches Homeowners Association, Inc.; the trustees of the Estate of Bernice Pauahi Bishop ("KS"); and JV Enterprises, LLC).

### 3.    The *Burnes* Proposed Class and Parties

The *Burnes* Plaintiffs seek to certify the following class:

> All individuals and businesses that, as of August 8, 2023, owned or resided on real property in Lāhainā, Kāʻanapali, Honokowai, Kahana, Napili, and Kapalua ("West Maui") and suffered real property, personal property, and/or business losses from the Lāhainā Fire.

---

[5] Some parties use diacritical marks when referring to Lahaina.  The Court will not unless it is quoting a party who has.  *See* Mary Kawena Pukui, Samuel H. Elbert & Esther T. Mookini, *Place Names of Hawaii* 127 (1974) (identifying Lahaina as "[d]istrict, quadrangle, town, roadstead, West Maui, formerly the gathering place for whalers, and the capital of the Islands from 1820 to 1845" and Lā-hainā as an "[o]ld pronunciation of Lahaina"); Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 471 (1986) (identifying Lā-hainā as an ancient name for Lahaina).

*Burnes*, ECF No. 1-2 ¶ 72.  They bring state law claims against the following groups of defendants: (1) "HECO" (Hawaiian Electric Company, Inc.; Maui Electric Company, Limited; Hawaiʻi Electric Light Company, Inc.; Hawaiian Electric Industries, Inc.); (2) the trustees of the Estate of Bernice Pauahi Bishop ("KS"); and (3) Maui County.

### D.     General Allegations

Broadly speaking, the plaintiffs in these three putative class actions allege the Lahaina Fire and the vast destruction resulting from it were preventable.  Those naming HECO and the Telecom Defendants fault them for failing to prevent the Lahaina Fire and its spread by failing to design, construct, inspect, and maintain their infrastructure in a manner necessary to avoid known fire risks, which includes HECO's refusal to deenergize their facilities on August 8, 2023 despite "High Wind Warnings" and "Red Flag Warnings" regarding wind and fire risks.  They fault certain Landowner Defendants for failing to prevent the Lahaina Fire and its spread by not managing the vegetation on their land.  More specifically, they claim the Landowner Defendants facilitated the surge of the Lahaina Fire by allowing dry, invasive vegetation to flourish on their properties, causing the fire to spread more rapidly and intensely.  Those who name the State and Maui County fault those parties for mismanagement of land and people, contending those entities failed to: prepare for, mitigate, and address known wildfire risks on Maui; warn

people about the Lahaina Fire; and implement evacuation procedures, all of which resulted in chaos, destruction, and death.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant may remove a civil action brought in a state court to federal district court if the district court has original jurisdiction.  *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679–80 (9th Cir. 2006). "Removal and subject matter jurisdiction statutes are 'strictly construed,' and a 'defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability.'"  *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014) (quoting *Luther v. Countrywide Home Loans Serv. LP*, 533 F.3d 1031, 1034 (9th Cir. 2008)).  However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (internal quotations and citations omitted); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted

expansively.").

## III.   DISCUSSION

Removing Defendants contend removal was appropriate under either the MMTJA or CAFA.  For the reasons articulated in the Court's order remanding *Sheikhan*, the Court concludes jurisdiction does not exist under the MMTJA because these actions do not "arise[] from a single accident, where at least 75 natural persons have died in the accident at a discrete location[.]"  28 U.S.C. § 1369(a); *see also id.* § 1369(c)(4).  Unlike *Sheikhan*, however, *Eder*, *Naki*, and *Burnes* are putative class actions, so the Court must next assess whether removal of these cases was proper under CAFA.[6]

## A.   Necessary Prerequisites to CAFA Jurisdiction

CAFA provides federal jurisdiction over class actions where: (1) the proposed class has more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2), (d)(5)(B).  No one disputes that these elements are met here, and the Court agrees Removing Defendants have satisfied their burden as to these elements.  *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (noting CAFA did not change the longstanding rule that the removing party bears the burden of

---

[6]  Although no party formally moved for remand in *Burnes*, it is clear from the supplemental briefing in *Burnes* that those plaintiffs seek remand.  *Burnes*, ECF No. 52.

establishing a prima facie case of removal jurisdiction).

The State, however, argues that remand of *Eder* and *Naki* is warranted for three reasons:  (1) Removing Defendants cannot satisfy an additional prerequisite under CAFA (the "state action" provision); (2) CAFA's local controversy and home state exceptions apply; and (3) the State enjoys Eleventh Amendment immunity.  The *Burnes* Plaintiffs now also ask the Court to remand that action under CAFA's home state exceptions.  And the State, as well as the *Eder* and *Burnes* Plaintiffs, alternatively ask the Court to stay or dismiss these actions in favor of the actions proceeding in Hawaiʻi state court under *Colorado River*.

The Court initially turns to each case separately to address the parties' arguments regarding the "state action" provision and the CAFA exceptions.  Then it will collectively address Eleventh Amendment immunity and the *Colorado River* doctrine.  Finally, it ends the Order with directives to the parties.

**B.    *Eder***

### 1.    The State Action Provision

Pursuant to what is known as the "state action" provision of CAFA, jurisdiction does not exist under CAFA if "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief[.]"  28 U.S.C. § 1332(d)(5)(A).  The Ninth Circuit

views this as a prerequisite to jurisdiction rather than an exception.  *See Serrano*, 478 F.3d at 1020 n.3.

### a.   *All* Primary Defendants Must Be States

While the Ninth Circuit has yet to determine whether the state action provision bars CAFA jurisdiction only when *all* primary defendants are States, state officials, or state entities, other Circuits conclude that it does.  *See Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014) ("The use of the definite article, 'the,' before the plural noun, 'primary defendants,' and the use of the plural verb, 'are,' leaves no doubt Congress intended the state action provision to preclude CAFA jurisdiction only when all of the primary defendants are states, state officials, or state entities."); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 547 (5th Cir. 2006) ("§ 1332(d)(5)(A) is clear—all primary defendants must be states").

In any event, based on the Ninth Circuit's interpretation of the phrase "the primary defendants" in other sections of CAFA, the Court concludes the Ninth Circuit would also hold that CAFA jurisdiction is lacking only if *all* primary defendants are "States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."  *See Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019) (concluding in the context of CAFA's mandatory home state exception that "by using the word 'the' before the

14

words 'primary defendants' rather than the word 'a,' [CAFA] requires remand under the home state exception only if all primary defendants are citizens of" the alleged home state) (citation omitted and alteration in original).  The State does not argue to the contrary.

Instead, the State argues that only it and Maui County are "primary defendants," such that remand is warranted under this provision.  *See Eder*, ECF No. 89-1 at 19–20.  The Court disagrees, again finding Ninth Circuit authority addressing other portions of CAFA instructive.  In *Singh*, the Ninth Circuit interpreted "primary defendant" as follows, in the context of the mandatory home state exception:

> Aligning ourselves with our sister circuits, we hold that a court analyzing whether a defendant is a "primary defendant" for purposes of CAFA's home state exception should first assume that all defendants will be found liable.  The court should then consider whether the defendant is sued directly or alleged to be directly responsible for the harm to the proposed class or classes, as opposed to being vicariously or secondarily liable.  The court should also consider the defendant's potential exposure to the class relative to the exposure of other defendants. Courts should not treat these considerations as exhaustive or apply them mechanistically.   The inquiry is whether a defendant is a "'principal,' 'fundamental,' or 'direct'" defendant.

925 F.3d at 1068 (citations omitted).  Here, the *Eder* Plaintiffs allege that HECO and the Telecom Defendants caused the Lahaina Fire and that the Private Landowner Defendants, alongside the State, contributed to its spread.  *See, e.g.,*

*Eder*, ECF No. 1-2 ¶¶ 4–6, 8, 93–96, 117–20, 131, 135–39.[7]  The Court thus concludes that all the defendants named in *Eder* are primary defendants where Plaintiffs are also suing private actors directly for their own actions in contributing to the totality of the harm that resulted from the Lahaina Fire.

The State offers a slightly different interpretation of "primary defendant"—someone who has "substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed class (as opposed to simply a few individual class members)."  *See Eder*, ECF No. 89-1 at 19 (citing *Corsino v. Perkins*, 2010 WL 317418, at *5 & n.10 (C.D. Cal. Jan. 19, 2010) (quoting S. Rep.

---

[7]  *See also Eder*, ECF No. 1-2 ¶ 8 ("The combination of [HECO]'s failure to deenergize their power lines and to replace their old and vulnerable wooden power poles; the Telecommunications Defendants' destabilization of [HECO's] wooden power poles; the Private Landowner Defendants' and State Landowner Defendants' failure to maintain and manage the vegetation on the land where the fire started and spread; and the County's failure to implement reasonable, non-costly wildfire mitigation measures before the Lahaina Fire and to sound sirens warning people of the rapidly approaching Lahaina Fire *all contributed to cause this unprecedented disaster*.  *Together*, these failures caused loss of life; serious injuries; destruction of thousands of homes and businesses; displacement of thousands of people; and damage to, and the destruction of, many of Hawaiʻi's treasured historic and cultural sites.") (emphasis added).

No. 109-14, at 43–44 (2005)).[8]  But the Court would reach the same conclusion if it applied the State's proposed interpretation.  In *Eder*, there is no indication that HECO and the Telecom Defendants (alleged to have caused the Lahaina Fire) would be liable to only a minority of class members.  And so, even adopting the State's definition of "primary defendant," Removing Defendants have met this jurisdictional prerequisite.

### b.  Maui County Is Not a State or Similar Governmental Entity

Yet, even if the Court concluded that only the State and Maui County are primary defendants, remand would still not be warranted.  Removing Defendants correctly note that Maui County is not an "other governmental entit[y] against whom the district court may be foreclosed from ordering relief."  28 U.S.C. § 1332(d)(5)(A).  As Removing Defendants explain, "[f]ederal courts have long declined to extend Eleventh Amendment immunity to counties."  *Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 708 (9th Cir. 2019).  In its reply, the State does not respond to Removing Defendants' argument on this point, and so effectively

---

[8]  The district court in *Corsino* explained that "'[p]rimary defendant' is not defined in the statute, and the Ninth Circuit has expressly declined to address [the] definition of the term."  2010 WL 317418, at *5.  But *Corsino* predates by nearly a decade the Ninth Circuit's decision in *Singh,* discussed above, which did address the meaning of that term in the context of a CAFA exception.  The State cites *Singh* elsewhere when addressing CAFA exceptions, *see Eder*, ECF No. 89-1 at 25, but fails to explain why the Court should not look to that discussion in *Singh* when evaluating the state action disqualifier.

concedes that Maui County is not the type of governmental actor that defeats CAFA jurisdiction under § 1332(d)(5)(A).

Granted, the Court recognizes that a county may be entitled to immunity if it is acting as an "arm of the state." *See Ray*, 935 F.3d at 708–09.  At the hearing, though, counsel for the State did not argue that was the case here—stating only that the Eleventh Amendment relates strictly to the State, not Maui County.  Nor is there any indication Maui County was acting as an arm of the State, based on the Ninth Circuit's updated test for Eleventh Amendment immunity.  *See Kohn v. State Bar of California*, 87 F.4th 1021, 1030 (9th Cir. 2023) (directing consideration of "(1) the state's intent as to the status of the entity, including the functions performed by the entity; (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury") (citations and alterations omitted).  Under Hawaiʻi law, counties are governmental entities distinct from the State and governed according to their own charters.  *See, e.g.*, Haw. Const. art. VIII § 2; Haw. Rev. Stat. § 46-1.5(13) ("Each county shall have the power to enact ordinances deemed necessary to protect health, life, and property, and to preserve the order and security of the county and its inhabitants on any subject or matter not inconsistent with, or tending to defeat, the intent of any state statute where the statute does not disclose an express or implied intent that the statute shall be exclusive or uniform throughout the State[.]"); *Kahale v. City & Cnty. of Honolulu*,

18

104 Hawai'i 341, 346, 90 P.3d 233, 238 (2004) ("A county. . . is not an executive department, board, or commission of the State.") (citation omitted).  And the allegations here do not suggest that Maui County was acting on behalf of or under the control of the State.  *See, e.g.*, *Eder*, ECF No. 1-2 ¶¶ 7–8, 80–81, 83–92, 132– 33.[9]

For all these reasons, then, remand is not warranted based on 28 U.S.C. § 1332(d)(5)(A).

## 2.     CAFA Exceptions

The State also argues the Court should remand *Eder* under CAFA's exceptions.  Three such exceptions exist—two of which are mandatory, and one of which is discretionary.  The party seeking remand bears the burden of proof as to any exception under CAFA.  *See Serrano*, 478 F.3d at 1019.  Because the

---

[9]  At the risk of belaboring a point the State made little effort to defend and effectively conceded at the hearing, the Court notes for completeness that it is not convinced by the State's reliance on *Hangarter v. Paul Revere Life Ins. Co.*, 2006 WL 213834, at *3 (N.D. Cal. Jan. 26, 2006) (remanding under § 1332(d)(5)(A) after concluding a state official was a primary defendant because plaintiff sought mandamus relief against him and one claim was only brought against him, and because he would be liable to the entire class).  *Hangarter*, which predates *Singh*, seems to suggest that remand is warranted if one primary defendant is an arm of the state, even if others are not.  *See* 2006 WL 213834, at *3 (noting plaintiff sought millions of dollars from other defendants and holding only that the state official was "a primary defendant," without discussing whether he was the only primary defendant).  *Hangarter* is therefore not persuasive here where Removing Defendants do not object that the State and Maui County are primary defendants— but instead contend other defendants are as well.

exceptions depend on how each class is defined, when each action was filed, and who was named as a defendant, the Court returns to the proposed class definition in *Eder*:

> All persons and entities who suffered (1) real property loss, (2) personal property loss, (3) business loss, and/or (4) personal injury as a result of the Lahaina Fire that started on August 8, 2023.

*Eder*, ECF No. 1-2 ¶ 154.

### a.    Mandatory and Discretionary Home State Exceptions

There are two exceptions that are referred to as "the home state exception," one that is mandatory and the other that is discretionary.  Each only applies if "the primary defendants" are citizens of Hawaiʻi.  *See* 28 U.S.C. § 1332(d)(3), (d)(4)(B).

In *Eder*, one of the Private Landowner Defendants—JV Enterprises, LLC—is not a Hawaiʻi citizen, *see Eder*, ECF No. 1 ¶ 20, but is alleged to be directly responsible (alongside and in the same manner as all other landowner defendants) for its own conduct in failing to properly maintain vegetation, thereby contributing to the spread of the fire, and with it damage to the putative class.  *See, e.g.*, *Eder*, ECF No. 1-2 ¶¶ 6, 8, 54, 96, 99, 131, 182–87, 211–18; *see also Singh*, 925 F.3d at 1068.  The State offered no argument in *Eder* as to why JV Enterprises, LLC is *not* a primary defendant and, despite Removing Defendants arguing JV Enterprises, LLC *is* a primary defendant, the State failed to address the argument in its reply.

In addition, one of the Telecom Defendants in *Eder*—Spectrum Oceanic, LLC—is also not a Hawai'i citizen, *see Eder*, ECF No. 1 ¶ 20, yet is alleged to have overloaded utility poles and therefore contributed to causing the fire.  *See, e.g.*, *Eder*, ECF No. 1-2 ¶¶ 5, 8, 49.  Again, the State makes no mention of Spectrum and fails to respond to the Removing Defendants' argument that these exceptions cannot apply because Spectrum is alleged to have been fundamentally involved in starting the fire and therefore directly liable for all damage caused by the fire.  The Court thus concludes the State has not met its burden of demonstrating that either home state exception applies in *Eder* where it has failed to carry its burden of demonstrating that *all* primary defendants are citizens of Hawai'i.

### b.   Local Controversy Exception

Under the local controversy exception, a Court *must* decline jurisdiction

> (i) over a class action in which—

>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

>> (II) at least 1 defendant is a defendant—(aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed; and

>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

      (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).

Taking the last requirement first, Removing Defendants concede *Eder* was the first-filed putative class action related to the Lahaina Fire, *see Eder*, ECF No. 98 at 26, so subsection (ii) is satisfied here.  Numerous defendants allegedly responsible for causing the fire (e.g., HECO) and contributing to its spread (e.g., most of the Private Landowner Defendants) are citizens of Hawai'i, where most of the personal and property damage occurred, meaning subsections (i)(II) and (i)(III) are also met and not in dispute.

Instead, what is disputed is whether "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens" of Hawai'i.  Again, it is the State's burden to demonstrate as much by a preponderance of the evidence.  *See Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020).  The Ninth Circuit's discussion regarding a party's burden in seeking remand based on a CAFA exception, particularly related to the citizenship of putative class members, helps to frame the issues here.  *See id.*  In *Adams*, the Ninth Circuit explained:

> To meet this burden, the moving party must provide *some* facts in evidence from which the district court may make findings regarding class members' citizenship."  *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (quotation

marks omitted) (emphasis added).  Citizenship is determined "as of the date the case became removable[.]" *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013); 28 U.S.C. § 1332(d)(7). "A district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard." *Id.* at 884.  Although such a finding must be based on more than mere "guesswork," *id.*, we have repeatedly cautioned that the burden of proof on a [party seeking remand] "should not be exceptionally difficult to bear." *Id.* at 886.

"To be a citizen of a state, a natural person must first be a citizen of the United States . . . . [Her] state citizenship is then determined by her state of domicile[.]" *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  One's domicile is her "permanent home"—that is, where (i) she resides, (ii) "with the intention to remain or to which she intends to return." *Id.*  At minimum, a person's residence constitutes *some* evidence of domicile.  *Mondragon*, 736 F.3d at 886. "[A] party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Id.* at 885.

*Id.*

With that in mind, the Court concludes the State has not met this burden.  To attempt to meet it, the State's motion in *Eder* offers the following:

The record reflects that at least two-thirds of the class is comprised of residents of Hawaiʻi, all of whom are "similarly situated." Ex. A at ¶¶ 2, 13–38, 152, and 163.

[]

The proposed class is comprised of residents of Hawaiʻi.  *See* Ex. A at ¶¶ 2 and, 13–38.  Specifically, at least 12 of the 25 named Plaintiffs owned real property located in Hawaiʻi. *See* Ex. A. ¶¶ 13–15, 18–20, 22–23, 28, 32–33, 35.  At least 10 of the named Plaintiffs rented real property located in Hawaiʻi. *See* Ex. A. at

23

¶¶ 17, 21, 24–27, 31, 34, 36–37.  The remaining named Plaintiffs otherwise lived or worked in Hawaiʻi.  *See* Ex. A. at ¶ 2.  Like many of the named Plaintiffs who reside in Hawaiʻi, the class members are presumed to include citizens of Hawaiʻi.  *See* Ex. A at ¶¶ 2, 13–38, 163.

*Eder*, ECF No. 89-1 at 22, 25.  So, essentially, the State relies on the fact that most of the *named* plaintiffs in *Eder* are *residents* of Hawaiʻi, the allegation that these plaintiffs' claims are typical of the putative class, and the general allegation that the lawsuit is brought "on behalf of the thousands of people who live and work in and around the town of Lahaina," *Eder*, ECF No. 1-2 ¶ 2.  But the proposed class in *Eder* is not so narrowly circumscribed to those who own or rent property on Maui, or lived or worked there—nor is it limited only to residents or citizens of Hawaiʻi.  *See id.* ¶ 154.  Instead, the proposed class in *Eder* is defined broadly as, seemingly, anyone and everyone who suffered any type of loss as a result of the Lahaina Fire, to wit: "All persons who suffered (1) real property loss, (2) personal property loss, (3) business loss, and/or (4) personal injury as a result of the Lahaina Fire that started on August 8, 2023." *Id.*  As Removing Defendants noted at the hearing, some of the named plaintiffs in *Eder* are plainly *not* citizens of Hawaiʻi. *See Eder*, ECF No. 1 ¶¶ 17–18 (removal notice contending that six named plaintiffs are citizens of Oregon or California).  The State's arguments on this front thus fail to take into account the nature of the proposed class in *Eder*.  And while it is entirely possible—and perhaps even likely—that greater than two-thirds of the

24

proposed class are citizens of Hawai'i, just saying so isn't enough.

Indeed, the Ninth Circuit has previously held that a party seeking remand fails to meet their burden when they fail to produce any evidence and instead rely only on a proposed class definition, which is effectively what the State is relying on in *Eder*. *See Mondragon*, 736 F.3d at 882–84.  In *Mondragon*, the proposed class was consumers who purchased and registered cars in California. *See id.*  But pointing to that alone was insufficient to meet the two-thirds burden because it was possible people who were not citizens of California could still be class members (e.g., members of the military, out-of-state students, owners of second homes or other temporary residents, persons who are not U.S. citizens, etc.) and there was no *evidence* to support a finding that California citizens outnumbered these potential non-citizens by more than two to one.  *See id.*

Along the same lines, the Ninth Circuit has determined that a stipulation that two-thirds of the putative class had last known addresses in California was insufficient standing alone—again based on unknowns as to whether some of those individuals were U.S. citizens or domiciled elsewhere despite residing in California at the relevant time. *See King*, 903 F.3d at 876.  In comparison, in *Adams*, the plaintiff submitted a declaration stating that 90% of the putative class members in a wage and hour action had last known addresses in California, and that employees had to attest that they were United States citizens and California

citizens in the course of their employment—data points the Ninth Circuit found provided plaintiff a "substantial cushion" to meet her burden under the discretionary home state exception of showing that one third of the putative class members were California citizens. *See* 958 F.3d at 1222–23.

In a nod to this reasoning, Removing Defendants offer evidence suggesting that citizens of Hawaiʻi do not outnumber non-citizens with regard to the putative class in *Eder*—let alone by a factor of two to one as necessary for the local controversy exception. Specifically, Removing Defendants contend that, according to the 2020 census, Lahaina had approximately 12,700 residents, approximately 2,000 of whom were not U.S. citizens—meaning at most 10,700 members of the putative class are citizens of Hawaiʻi (assuming these individuals were also domiciled there and incurred loss as a result of the Lahaina Fire). *Eder*, ECF No. 98 at 25. Removing Defendants then contend that 15,000 tourists were vacationing in West Maui at the time and may have incurred losses, and that potentially even more tourists canceled pre-planned trips (e.g., 88 transpacific flights were canceled representing over 23,000 seats). *See id.* As further proof that a significant number of individuals or entities who are not citizens of Hawaiʻi are putative class members in *Eder*, Removing Defendants note: approximately 33% of Lahaina residences were short-term vacation rentals, approximately 50% of Lahaina residences were renter-occupied (short term or otherwise); approximately

26

60% of condos and 52% of homes on Maui are sold to non-Hawai'i residents, including investors and second homeowners; and that out-of-state businesses owned land or operated in or around Lahaina or may claim to have been injured as a result of the fire.  *See id.* at 26.

In reply, the State does not dispute the veracity of any of these figures. Instead, it contends that proof of residency is sufficient—ignoring Ninth Circuit authority like *Mondragon*, *King*, and *Adams* that make clear that proof of residency alone is insufficient where, as here, there is no clear evidence that residents of a state are also citizens of that state, *see also Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) ("We agree that residency is not equivalent to citizenship.")—not to mention the discussion above that the putative class here seems to include many individuals and entities who are not even residents.

The State also contends for the first time in reply that the Court should instead use the individual actions that have been filed in state court (that were also removed, but have now been remanded) as a proxy for the putative class members in *Eder*.  *See Eder*, ECF No. 103 at 15.  But the State cites no authority that this is sufficient to meet its burden when, again, the proposed class here is not limited to citizens of Hawai'i, or even residents of Lahaina, and the Removing Defendants have articulated specific reasons in support of that contention.  For example, the State in reply offers: "All real property damage occurred in Lāhainā.  All personal

injury losses occurred in Lāhainā." *Id.* But this fails to respond to Removing Defendants' argument that many individuals and entities that own property in and around Lahaina are *not* citizens of Hawai'i, or Removing Defendants' argument that the tourists there at the time of the fire, and those who canceled plans because of the fire, could be swept within the class as it is defined in *Eder*—even if none have filed an individual action.

The paucity of evidence offered by the State, particularly in response to Removing Defendants' challenge on this front, leaves the Court to make assumptions and engage in guesswork, which means the State has failed to carry its burden. The Court can understand the outrage of the State (and other plaintiffs[10]) in Removing Defendants placing a tourist's canceled airfare alongside the devastating loss of lives, homes, and livelihoods suffered by Hawai'i citizens. But the *Eder* Plaintiffs are the ones who created this putative class. And the Court can

---

[10]  Because it was relevant to the MMTJA's abstention provision, plaintiffs in *Sheikhan* offered evidence that a great majority of individuals interested in filing an action connected with the Lahaina Fire are citizens of Hawai'i. *See Sheikhan*, ECF No. 42-1 (Creed Decl.) (attesting that a survey of law firms revealed there were 5,081 clients (not all of whom had yet filed claims) retained by those law firms, where 4,596 were believed to be Hawai'i citizens, i.e., a little over 90%). Although the State has not asked the Court to look at that evidence as relevant to jurisdiction under CAFA, the Court notes that doing so would not change the result here in light of how the proposed class is defined in *Eder* and the evidence Removing Defendants have put forth challenging the percentage of putative class members who are residents of Hawai'i, let alone citizens. *See also, e.g.*, *id.*, ECF No. 56-2 (Apo Decl.) (noting the Lahaina Fire destroyed multiple hotels).

only analyze the evidence related to the citizenship of that class that the parties have put before it.  Prioritizing the claims of those who suffered the most is, even if unfairly, not part of that calculus.

In sum, then, there is no CAFA exception that precludes the Court's jurisdiction over *Eder* at this stage.

## C.   *Naki*

The Court now turns its attention to *Naki*, and reaches the same conclusion, although the conclusion is even more easily reached in *Naki*.  As a reminder, the putative class in *Naki* is:

> All persons, organizations, and companies that suffered real property and personal property losses as a result of the Lāhainā Fire on August 8, 2023.

*Naki*, ECF No. 1-2 ¶ 31.  And also as a reminder, the *Naki* Plaintiffs prefer to remain in federal court.  *See Naki*, ECF Nos. 45, 49, 66.

### 1.   The State Action Provision

Again, under the "state action" provision, jurisdiction does not exist under CAFA if "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief[.]" 28 U.S.C. § 1332(d)(5)(A).  And, as explained above, the state action provision bars CAFA jurisdiction only where *all* primary defendants are States, state officials, or state entities.

29

In *Naki*, the State again argues that only it and Maui County are "primary defendants," such that remand is warranted under this provision. *Naki*, ECF No. 21 at 20–22. But, as with *Eder*, the Court rejects the argument. The *Naki* Plaintiffs allege that the Private Landowner Defendants, alongside the State, contributed to the spread of the Lahaina Fire and are jointly and severally liable for the harm caused by it. *Naki*, ECF No. 1-2 ¶¶ 14, 39–44. 64–65, 97. And so the Court concludes that all the defendants named in *Naki* are primary defendants where Plaintiffs are also suing private actors directly for their own actions in contributing to the totality of the harm that resulted from the Lahaina Fire.

Again, even if the Court were to adopt the State's definition of "primary defendant," i.e., someone who has "substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of members of the proposed class (as opposed to simply a few individual class members," *Naki*, ECF No. 21 at 19–20 (citing *Corsino*, 2010 WL 317418, at *5 (quoting S. Rep. No. 109-14, at 43–44 (2005)), it would reach the same result. The Private Landowner Defendants in *Naki* are alleged to have contributed to the rapid spread of the Lahaina Fire. They, too, face substantial exposure to significant portions of the *Naki* proposed class.

As with *Eder*, the state action provision cannot preclude jurisdiction here because Maui County is a named defendant. *See Naki*, ECF No. 1-2 ¶ 15.

Removing Defendants correctly note that Maui County is not an "other governmental entit[y] against whom the district court may be foreclosed from ordering relief."  28 U.S.C. § 1332(d)(5)(A).  And so the state action provision does not offer the State any relief from federal jurisdiction in *Naki* either.

## 2.    CAFA Exceptions

### a.    Local Controversy Exception

Again, under the local controversy exception, a Court *must* decline jurisdiction

> (i) over a class action in which—
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant—(aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons

28 U.S.C. § 1332(d)(4)(A).  Because there is no dispute *Naki* was filed after *Eder*

31

and *Burnes* and asserts similar allegations against many of the same defendants, the State cannot meet its burden as to subsection (ii)—meaning remand is not appropriate under this exception.  *See Naki*, ECF No. 49 at 30 (noting this action was filed over a month after *Eder* and *Burnes*); *see also Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 370 (E.D. La. 2007) (concluding local controversy exception could not apply where similar putative class actions had been filed against insurance companies arising out of loss incurred from Hurricane Katrina in the three years preceding the filing of this action).

The State asks the Court to ignore the plain language of subsection (ii) because all three putative class actions are "at the same stage."  *Naki*, ECF No. 21 at 27.  But the State cites nothing to support the Court concluding that subsection (ii) means something other than what it says—i.e., that if a similar class action is filed at any time in the three years prior to the filing of the instant case, this CAFA exception cannot apply.  *See Meyers v. Birdsong*, 83 F.4th 1157, 1160 (9th Cir. 2023) ("In statutory interpretation, the plain meaning of a statute controls where that meaning is unambiguous.") (citation and internal quotations omitted).

The Court doubts that it can ignore subsection (ii).  For example, some courts—in reliance on a Senate Judiciary Committee report—have noted that subsection (ii) was intended to ensure that non-local matters could remain in federal courts because the numerosity of class actions may indicate a matter is not

truly local.  *See Jadeja v. Redflex Traffic Sys., Inc.*, 2010 WL 4916413, at *3 (N.D. Cal. Nov. 22, 2010) (citing S. Rep. No. 109–14, at 41 (2005)).  As relevant here, that report states:

> The fourth and final criterion is that no other class action involving similar allegations has been filed against any of the defendants over the last three years on behalf of the same or other persons.  *In other words, if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address. As such, it is a test for assessing whether a controversy is localized.*  The Committee wishes to stress that another purpose of this criterion is *to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception and thus placed beyond the coordinating authority of the Judicial Panel on Multidistrict Litigation*.  The Committee also wishes to stress that the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed. The inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

S. Rep. 109-14, 40-41 (emphases added).  While the State vehemently maintains that actions arising out of the Lahaina Fire *are* purely local—which may counsel in favor of remanding them—the Court is also faced with three competing class actions involving similar factual allegations that could benefit from coordination—

which counsels in favor of retaining them.[11]  Because it is the State's burden to demonstrate this exception exists, and it cites no authority that the Court can ignore the plain language of subsection (ii), the Court concludes the local controversy exception is inapplicable to *Naki*.

> **b.  Mandatory and Discretionary Home State Exceptions**

The home state exceptions can be easily dispensed with in *Naki* because each only applies if "the primary defendants" are citizens of Hawaiʻi.  *See* 28 U.S.C. § 1332(d)(3), (d)(4)(B).  In *Naki*, one of the private landowner defendants—JV Enterprises, LLC—is not a Hawaiʻi citizen, *see Naki*, ECF No. 1 ¶ 16, but is alleged to be directly responsible (alongside and in the same manner as all other landowner defendants) for its own conduct in failing to maintain vegetation, thereby contributing to the spread of the fire, and with it damage to the putative class—and is further alleged to be jointly and severally liable for all injuries caused by the fire.  *See, e.g.*, *Naki*, ECF No. 1-2 ¶¶ 39–46, 63, 64–66, 78–83, 97; *see also Singh*, 925 F.3d at 1068.  In its motion, the State offered no

---

[11]  The Court recognizes the inherent contradiction in this point because, e.g., it could mean the *first* of many similar putative class actions could be remanded because subsection (ii) would be no obstacle.  And it could, as appears to be the case here, exclude actions that seem to involve a highly localized controversy.  But the State has still failed to articulate how, as a matter of law, the Court can ignore this requirement.  As the *Caruso* case cited above demonstrates, the plain language has been applied in contexts like this one—where the existence of numerous class actions arising out of a local disaster (there, Hurricane Katrina) meant plaintiffs could not rely on the local controversy exception.  *See* 469 F. Supp. 2d at 370–71.

argument as to why JV Enterprises, LLC is *not* a primary defendant and, despite Removing Defendants arguing JV Enterprises, LLC *is* a primary defendant, the State makes no mention of this issue in its reply.  The Court thus concludes the State has not met its burden of demonstrating that either home state exception applies in *Naki* where it has failed to carry its burden of demonstrating that *all* primary defendants are citizens of Hawaiʻi.

Overall, then, the State has not demonstrated any CAFA exception applies in *Naki*.

## D.   *Burnes*

### 1.   **Mandatory and Discretionary Home State Exceptions**

Finally, as noted a few times already at this point, the *Burnes* Plaintiffs did not initially move to remand.  And the class in *Burnes* is more narrowly defined:

> All individuals and businesses that, as of August 8, 2023, owned or resided on real property in Lāhainā, Kāʻanapali, Honokowai, Kahana, Napili, and Kapalua ("West Maui") and suffered real property, personal property, and/or business losses from the Lāhainā Fire.

*Burnes*, ECF No. 1-2 ¶ 72.

Because *Burnes* was filed after *Eder*, the local controversy exception is inapplicable for the same reasons discussed above regarding *Naki*.  *See Eder*, ECF No. 98 at 26.  However, because the only Defendants in *Burnes* are Hawaiʻi citizens (HECO; Maui County; and KS), and because the proposed class in *Burnes*

is more narrowly drawn, the Court sua sponte directed the parties to address whether the home state exceptions apply. *See Burnes*, ECF No. 50 (citing *Adams*, 958 F.3d at 1223–24). The *Burnes* Plaintiffs now contend both home state exceptions apply. *See Burnes*, ECF No. 52. But for reasons similar to those discussed above in addressing the State's failure to proffer the citizenship of the class members in *Eder*, the Court concludes the *Burnes* Plaintiffs have failed to meet their burden related to establishing the citizenship of their class members under the home state exceptions.

Under the discretionary home state exception, the district court may decline jurisdiction if greater than one-third but less than two-thirds of the proposed class and the primary defendants are citizens of the state where the action was filed, if certain discretionary factors warrant doing so. *See* 28 U.S.C. § 1332(d)(3). Meanwhile, the mandatory home state exception requires the district court to decline jurisdiction if two-thirds or more of the proposed class and the primary defendants are citizens of the state where the action was filed. *See* 28 U.S.C. § 1332(d)(4)(B).

Ultimately, the *Burnes* Plaintiffs ask the Court to look at their class definition and use common sense to conclude that it must be that over one-third of people or businesses who owned or resided on property in West Maui and suffered property loss as a result of the Lahaina Fire are Hawai'i citizens. But in the cases

36

they rely on for this notion that a district court may apply "common sense" when assessing CAFA exceptions, the plaintiffs offered something the *Burnes* Plaintiffs do not: credible data about the total size of the class and the citizenship of those in it.  *See Romo v. Panda Rest. Grp., Inc.*, 2012 WL 3930346, at *2, *4 (C.D. Cal. Sept. 7, 2012) (relying on expert opinion that 97% of the prospective class members, estimated at 14,000 employees of defendant's restaurants in California, were domiciled in California based on data regarding migration patterns based on age); *Vitale v. D.R. Horton, Inc.*, 2016 WL 4203399, at *3 (D. Haw. Aug. 9, 2016) (relying on data obtained from a third party revealing that 3,300 allegedly defective homes were built by the defendant in Hawaiʻi during the class period and then cross-referencing that data against which of those addresses (over 2,972) also had their tax bill sent to an address in Hawaiʻi).  There is no evidence like that here.

Instead, here, the *Burnes* Plaintiffs have not even provided an estimate about the total number of people in their putative class.  Without that, the Court doubts it can say they have met their burden.  *See Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) ("In order to determine whether two-thirds of class members are California citizens, *we must first determine the size of the class as a whole*.") (emphasis added).  Plaintiffs point to the declaration filed by counsel in *Sheikhan* (already discussed above), that "there are 5,081 unfiled and filed clients retained by the . . . law firms and 4,596 of those clients are believed to be Hawaii

citizens, amounting to 90.45%." *Sheikhan*, ECF No. 42-1 (Creed Decl.). But the Court can only guess how that 5,081 number compares to the universe of all putative class members in *Burnes*. *Cf. Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) (concluding declaration regarding citizenship of "10,118 potential plaintiffs" was insufficient to meet burden as to CAFA exception where court "kn[e]w nothing about the percentage of the total class represented by the 10,118 people on which plaintiffs' evidence depends").

The Court recognizes the *Burnes* Plaintiffs have cited examples where other district courts have said that a putative class that is limited to people who own property in a specific place is sufficient to meet the exceptions' requirements regarding citizenship percentages. *See Haynes v. EMC Mortg. Corp.*, 2010 WL 1445650, at *2 (N.D. Cal. Apr. 12, 2010); *Lautemann v. Bird Rides, Inc.*, 2019 WL 1670814, at *1 (C.D. Cal. Mar. 28, 2019). But that authority is not persuasive because *Haynes*, on which *Lautemann* relies, predates Ninth Circuit authority like *Mondragon*, *King*, and *Adams* already discussed above that require a plaintiff to present *some* evidence to carry their burden on the citizenship of class members. As the Ninth Circuit made clear in *Mondragon*:

> [W]e conclude that there must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 673–76 (7th Cir.2010); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798–802 (5th Cir.2007);

38

> *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165–66 (11th Cir.
> 2006).  By failing to produce any evidence regarding citizenship
> in the face of [defendant's] challenge to his jurisdictional
> allegations, [plaintiff] has failed to satisfy his burden of proof.

736 F.3d at 884; *see also King*, 903 F.3d at 879–81 (applying same standard to

local controversy and home state exceptions); *Adams*, 958 F.3d at 1221–23

(applying same standard to home state exception).  Further undermining the

*Burnes* Plaintiffs' position here, they have made no attempt to engage with the data

(also already discussed above) regarding the number of Lahaina residents who are

not U.S. citizens, or the suggestion that a not-so-insignificant amount of people or

businesses that own property or do business on Maui are not Hawai'i citizens.

*Burnes*, ECF No. 53 at 16.

The Court recognizes that obtaining necessary evidence may prove

challenging, e.g., because potential plaintiffs may still be in temporary housing or

records may have been destroyed.  But the *Preston* decision cited by the Ninth

Circuit in *Mondragon* involved claims arising out of Hurricane Katrina, and yet

still required the plaintiffs there to offer some reliable evidence.  *See* 485 F.3d at

801–02.  In any event, the *Burnes* Plaintiffs have not said that any such logistical

burdens are the reason why they failed to offer pertinent evidence on citizenship.

In sum, the Court agrees with the sentiment that it certainly seems likely that

the *Burnes* Plaintiffs could prove that over one-third of the putative class members

are Hawai'i citizens based on a common sense understanding of how the world

works.  But when the Court looks at the actual evidence before it on the issue, the

Court is basically just guessing at how everything fits together.  And as the Ninth

Circuit made clear in *Mondragon*, that is insufficient:

> As the Seventh Circuit noted, *such freewheeling discretion amounts to no more than "guesswork.  Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless."  Sprint*, 593 F.3d at 674.  A jurisdictional finding of fact should be based on more than guesswork.

736 F.3d at 884.  Based on the foregoing, the Court concludes the *Burnes*

Plaintiffs have not yet shown that *Burnes* should be remanded based on a

CAFA exception.  Notably, there is no dispute that all primary defendants in

*Burnes* are Hawai'i citizens.  And the six discretionary factors the Court

must evaluate in assessing the discretionary home state exception

overwhelmingly point towards remanding *Burnes*.  *See* 28 U.S.C. §

1332(d)(3)(A)–(F).  So the only obstacle to remand based on that CAFA

exception is Plaintiffs' failure to meet their burden regarding the citizenship

of class members.

Overall, this means that, as a matter of federal jurisdiction, *Eder*,

*Naki*, and *Burnes* were properly removed under CAFA and cannot yet be

remanded based on any CAFA exception.  The Court will address below

whether any party should be afforded a second chance to provide more

evidence on citizenship.  Before doing so, the Court will address two final

issues: the State's immunity under the Eleventh Amendment and whether parallel proceedings in state court justify staying or dismissing these actions under the *Colorado River* doctrine.

### D.     Eleventh Amendment Immunity (Relevant to *Eder* and *Naki*)

Although the State has not shown jurisdiction is lacking under CAFA, it has invoked its immunity under the Eleventh Amendment and contends that remand of all of *Eder* and *Naki* is the appropriate remedy.  There is no dispute that the State has timely and appropriately invoked its immunity.  *See Crowe v. Oregon State Bar*, 989 F.3d 714, 730 (9th Cir. 2021) ("The Eleventh Amendment bars, with a few exceptions (*see, e.g.*, *Ex parte Young*, 209 U.S. 123 (1908)), federal suits against unconsenting states, their agencies, and their officers 'regardless of the nature of the relief sought.'") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  But there is a dispute as to what happens as a result.  The parties essentially present the Court with three options: (1) remand the entirety of *Eder* and *Naki* (advocated by the State); (2) either partially remand or dismiss without prejudice the claims against the State in *Eder* and *Naki* (advocated by the Removing Defendants); or (3) sever the State and remand only the claims against it (advocated by the *Naki* Plaintiffs).

The State cites no persuasive authority that remand of an entire action is warranted simply because it has been named as a defendant and invoked its

immunity.  The Court thus agrees with Removing Defendants that remand of the entirety of *Eder* and *Naki* is not warranted based on the Eleventh Amendment.  *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 386 (1998) ("[T]he presence in an otherwise removable case of a claim that the Eleventh Amendment may bar does not destroy removal jurisdiction that would otherwise exist[.]"); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001) ("[A] district court may not under § 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it[.]") (citing *Schacht*, 524 U.S. at 391–92).

As to whether the appropriate course of action is a partial remand versus dismissal without prejudice, there does not appear to be clear binding authority from either the Supreme Court or the Ninth Circuit.  *See, e.g.*, *Schacht*, 524 U.S. at 391–92 (explaining that the reference to "case" in 28 U.S.C. § 1447(c), which requires a "case" to be remanded, could "[c]onceivably" refer to "a claim within a case as well as the entire case"); *Lee*, 260 F.3d at 1007 & n.8 (declining to decide "whether the district court could remand only [plaintiff's] standing-deficient claims" and noting that *Schacht* left that possibility open).

Courts in this District have ordered partial remand where, as here, certain claims are barred under the Eleventh Amendment.  *See Pahk v. Hawaii*, 109 F. Supp. 2d 1262, 1268 (D. Haw. 2000) (citing *Kruse v. State of Hawaii*, 68 F.3d 331 334 n.2 (9th Cir.1995)), which noted the Sixth Circuit's practice of remanding,

rather than dismissing, claims barred by the Eleventh Amendment and *Office of Hawaiian Affairs v. Dep't of Ed.*, 951 F. Supp. 1484, 1489 (D. Haw. 1996), which relied on *Gamboa v. Rubin*, 80 F.3d 1338, 1350 (9th Cir. 1996), before it was vacated on other grounds, *see Gamboa v. Chandler*, 101 F.3d 90 (9th Cir. 1996)).

More generally, district courts in the Ninth Circuit have ordered partial remand when a dismissal would prejudice the plaintiff, e.g., because of an expired statute of limitations—often in reliance on *Lee*, which noted in dicta that such scenario may present an appropriate basis to remand rather than dismiss nonjusticiable state law claims. *Compare, e.g.*, *Simon v. City & Cty. of San Francisco*, 2024 WL 590360, at *10 (N.D. Cal. Feb. 13, 2024) (noting that remand is appropriate where dismissal would result in the preclusion of state-law claims initially brought in a timely manner in state court) (citing *Lee*, 260 F.3d at 1007), *with Bunch v. Nationwide Mut. Ins. Co.*, 2012 WL 12846993, at *4 (W.D. Wash. Sept. 12, 2012) (dismissing without prejudice rather than partially remanding where there was no statute of limitations risk, despite plaintiff's claimed burden in having to re-file and re-serve claim in state court).

Here, the statute of limitations has not run against any claim against the State.  Still, the Court might ordinarily view partial remand as a better result given the issues at stake in these proceedings and the delay that jurisdictional issues have already caused.  *Cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988)

("Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money.  Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs.  Dismissal of the claim therefore will increase both the expense and the time involved in enforcing state law.").  But here, a partial remand also creates certain inefficiencies—in the form of carved-up class actions in state and federal court.  The Court concludes the better outcome is therefore to dismiss the claims against the State without prejudice and allow the named plaintiffs in *Eder* and *Naki* to determine how they wish to proceed (e.g., filing only individual claims against the State in the Special Proceeding in state court; re-filing their class claims against only the State in state court; or taking some other action).

The Court therefore DISMISSES WITHOUT PREJUDICE the claims against the State in both *Eder* and *Naki*.

## E.   *Colorado River* (Relevant to *Eder*, *Naki*, and *Burnes*)

Finally, the Court addresses the *Colorado River* doctrine—something it also raised sua sponte, in the hopes that the inefficiencies created by parallel federal and state litigation involving the Lahaina Fire might be avoided.  Ultimately, the Court concludes *Colorado River* does not apply.

"*Colorado River* and its progeny provide a multi-pronged test for

44

determining whether 'exceptional circumstances' exist warranting federal abstention from concurrent federal and state proceedings." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017).  In assessing whether to stay or dismiss a case based on *Colorado River*, a court should assess:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Id.* at 841–42 (citation omitted).  This is not a "mechanical checklist"; instead, these factors are applied pragmatically.  *See id.*  Still, there is a thumb on the scale in favor of exercising jurisdiction over a case if a court has it—because any doubt is resolved *against* staying or dismissing an action under *Colorado River*.  *See id.*[12]

---

[12]  The *Burnes* Plaintiffs claim a court can *remand* under *Colorado River*.  *See Burnes*, ECF No. 52 at 3 n.1 (citing *Abend v. City of Oakland*, 2007 WL 627916 (N.D. Cal. Feb. 26, 2007), where the district court noted that *Colorado River* permits a court to stay or dismiss a suit, but then remanded the case without explaining why that was a permissible outcome).  The Court disagrees.  No binding authority indicates remand is an appropriate remedy if *Colorado River* applies.  *See Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017) ("When it is appropriate for a court to decline to exercise jurisdiction pursuant to the *Colorado River* doctrine, we generally require a stay rather than a dismissal.").  Logically, the point of *Colorado River* is to determine whether or not it is appropriate for a case to *proceed*.  For example, the parallelism factor would be superfluous if a court could remand the case and allow it *to proceed* in state court.

Even if the first seven factors above support applying *Colorado River* (or are at least neutral), the last factor—regarding the parallelism of state and federal proceedings—is not met, meaning these actions cannot be dismissed or stayed in favor of the ones pending in state court.  The Court recognizes that *exact* parallelism is not required.  *See id.* at 845.  Still, the Ninth Circuit has made clear that "[w]hen one possible outcome of parallel state court proceedings is continued federal litigation [there is] a 'substantial doubt' that the state court action will provide a 'complete and prompt resolution of the issues,' because the federal court may well have something 'further to do.'"  *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 841 (9th Cir. 2023) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).  Here, under a variety of scenarios, the individual actions pending in state court will not resolve all issues in *Eder*, *Naki*, and *Burnes*.  For example, even if every defendant named in these actions is found liable in state court, and even assuming those liability findings have preclusive effect here, each named plaintiff (and, if certified, putative class member) would still need to litigate their individual damages.  Alternatively, if some defendants in these actions are found *not* liable in state court, that would not necessarily preclude the parties from relitigating liability here.  And, either way, class certification issues would still

need to be resolved here.[13]

Based on this, the Court does not have "full confidence" the actions in state court will resolve these cases, and so cannot stay or dismiss *Eder*, *Naki*, or *Burnes* under *Colorado River*.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 & n.7 (9th Cir. 1993) (noting it is unnecessary to weigh the additional *Colorado River* factors if "there exists a substantial doubt as to whether the state court proceedings will resolve all of the disputed issues in" the federal case); *see also United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) ("If there is any substantial doubt as to whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties . . . it would be a serious abuse of discretion to grant the stay or dismissal at all.") (internal quotations and citation omitted).

So, at this juncture, the Court concludes it has jurisdiction over all three putative class actions (aside from the claims in *Eder* and *Naki* against the State), and will uphold its obligation to exercise that jurisdiction.

---

[13]   The *Eder* Plaintiffs appear to argue this parallelism factor is met because, if remanded, *Eder* in state court will be the same as *Eder* that was in federal court, i.e., it is parallel to itself.  *See Eder*, ECF No. 110 at 7 ("[E]ach of these matters has 'exact parallelism' to its state court corollary before removal and will have 'exact parallelism' after remand.").  Plainly, *Colorado River* is inappropriate where a party contends the parallel suit in state court is, essentially, the very action that is *not* in state court, but instead presently in federal court.

**F.     Next Steps**

With those legal issues resolved, the Court turns to a few practical realities.

First, Removing Defendants contend that the Court's jurisdiction over *Eder*, *Naki*, and *Burnes* is now set in stone and no one should be afforded a second chance to submit more evidence on the citizenship of a putative class as relevant to a CAFA exception. *See, e.g.*, *Burnes*, ECF No. 53 at 15 n.2. The Court is not yet convinced Removing Defendants are correct on that front. In *Mondragon*, for example, the Ninth Circuit "suspect[ed]" that the plaintiff who had not submitted any evidence on citizenship could probably carry his burden "if he decide[d] to expend the effort." 736 F.3d at 885. It therefore directed the district court on remand to allow the plaintiff the opportunity—if he so chose—"to renew his motion to remand and to take jurisdictional discovery tailored to proving that more than two-thirds of the putative class are citizens of California." *Id.*; *see also King*, 903 F.3d at 881 ("On remand to the district court, however, [plaintiff] should be given an opportunity to seek additional jurisdictional discovery and to renew her motion to remand.").

The Court understands that the *Naki* Plaintiffs have no interest in remand. But for the *Eder* and *Burnes* Plaintiffs, the Court is unsure how much more effort they may be interested in expending to pursue remand. The Court therefore DIRECTS the parties in *Eder* and *Burnes* to meet and confer on those issues and

48

file a status report no later than April 19, 2024 addressing whether any party intends to seek jurisdictional discovery and/or file a renewed request to remand, and whether the parties are in agreement regarding an appropriate briefing schedule.[14]

Next, Removing Defendants suggest that *Eder*, *Naki*, and *Burnes* should be consolidated and that the Court should "order a consolidated amended class complaint." *See, e.g.*, *Eder*, ECF No. 112 at 15.  The Court DIRECTS the parties in all three actions to meet and confer on this proposal by May 3, 2024.  If the parties are in agreement, they may submit an appropriate stipulation for the Court's review.  If they are not, but Removing Defendants maintain that is the best path forward, Removing Defendants should file a motion to that effect.

Finally, Removing Defendants have repeatedly sought to assure the Court that parallel proceedings in state and federal court will not be used as a delay tactic nor will it result in inefficiencies.  To that end, in their supplemental briefing, Removing Defendants state: "This Court, and the parties, have mechanisms available to avoid duplication and inefficiency to the degree the federal and state actions overlap." *Eder*, ECF No. 112 at 28.  The parties should be prepared to address these "mechanisms" at the upcoming Rule 16 Scheduling Conferences

---

[14]  In any such briefing, Removing Defendants may renew their argument that it is improper to consider additional evidence at this point.

before Magistrate Judge Kurren in these matters, which the Court will set upon receipt of the parties' status report regarding any anticipated renewed motions to remand.

## IV.   CONCLUSION

For the reasons set forth above, the State's motions in *Eder* and *Naki* are GRANTED as follows:  all claims in *Eder* and *Naki* against the State are DISMISSED WITHOUT PREJUDICE.  The motions are otherwise DENIED, meaning the remainder of *Eder* and *Naki*, and all of *Burnes*, will proceed in federal court.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, April 5, 2024.

Jill A. Otake
United States District Judge

---

CIVIL NO. 23-00435 JAO-BMK, *Naki v. State of Hawaiʻi, et al.*;  CIVIL NO. 23-00452 JAO-BMK, *Burnes, et al. v. Hawaiian Electric Company Inc., et al.*; CIVIL NO. 23-00459 JAO-BMK, *Eder v. Maui Electric Company, Limited, et al.*; ORDER DISMISSING WITHOUT PREJUDICE CLAIMS AGAINST STATE OF HAWAIʻI DEFENDANTS AND OTHERWISE DENYING MOTIONS TO REMAND IN MAUI FIRE CASES BROUGHT AS PUTATIVE CLASS ACTIONS